## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

The Standard Fire Insurance Company
and its property casualty affiliates and
subsidiaries, including but not limited to
The Travelers Indemnity Company,
Travelers Home and Marine Insurance
Company, and Travelers Commercial
Insurance Company,

        Plaintiff,

v.

Erickson Building, Inc.; Lee W. Erickson;
Joshua Lee Whitehurst; Timothy Smolik;
David Newman; Kelby Pedery-Edwards;
and John Does 1-4,

        Defendants.

Civil No. 12-3003 (DWF/SER)

**MEMORANDUM
OPINION AND ORDER**

---

Bradley L. Doty, Esq., Richard S. Stempel, Esq., Steven P. Pope, Esq., and Tony Leo Douvier, Esq., Stempel & Doty, PLC, counsel for Plaintiff.

C. Alden Pearson, Esq., Acumen Legal Advisors, PLLC; and Jeffrey E. Grell, Esq., Grell & Feist LLC, counsel for Defendants Erickson Building, Inc. and Lee W. Erickson.

Mark E. Czuchry, Esq., Czuchry Law Firm, LLC, counsel for Defendant Joshua Lee Whitehurst.

Ross M. Hussey, Esq., Udoibok, Tupa & Hussey, PLLP, counsel for Defendant David Newman.

**INTRODUCTION**

This matter is before the Court on Defendants Erickson Building, Inc. and Lee W. Erickson's (together, "Erickson Defendants") Motion for Partial Judgment on the Pleadings (Doc. No. 17) and Plaintiff's Motion to Amend the Complaint (Doc. No. 25). For the reasons set forth below, the Court denies Erickson Defendants' motion and grants Plaintiff's motion.

**BACKGROUND**

Standard Fire Insurance Company, along with its property casualty affiliates and subsidiaries, (together, "Plaintiff") provides policies to its insureds for protection against losses, including damage caused by wind, hail or rainstorm. (Doc. No. 1, Compl. ¶ 3.) Erickson Building, Inc. ("Erickson Building") is a construction business that, among other things, replaces roofs damaged by storms. (*Id.* ¶ 4.) Lee W. Erickson ("Defendant Erickson") is the CEO and President of Erickson Building. (*Id.* ¶ 5.) Joshua Lee Whitehurst ("Defendant Whitehurst"), David Newman ("Defendant Newman"), Kelby Pedery-Edwards ("Defendant Pedery-Edwards"), Timothy Smolik ("Defendant Smolik"),[1] and John Does 1-4 (together, "Employee Defendants") are employees or agents of Erickson Building. (*See id.* ¶ 14.) The job duties of Employee Defendants include: detecting residential roofs with purported storm damage; marketing Erickson

---

[1] Timothy Smolik is not named as a Defendant in the proposed Amended Complaint. (*See generally* Doc. No. 29, Pope Aff. ¶ 2, Ex. 1 ("Am. Compl.").)

Building's services to the homeowners of such residences; and meeting with Plaintiff's property claims representatives.  (*Id*.)

Plaintiff alleges that Employee Defendants would make "cold calls" to Minnesota homeowners and inspect the homeowners' roofs.  (*Id*. ¶ 15.)  These homeowners included those insured by Plaintiff.  (*Id*.)  Plaintiff alleges that while Employee Defendants "inspected" such homes, Employee Defendants intentionally damaged the roofs to resemble storm damage, and Employee Defendants would then represent to the homeowners that a storm had damaged their roofs, which consequently needed to be repaired or replaced.  (*Id*. ¶¶ 16-17.)  Defendants or the homeowners would then notify Plaintiff of the damage.  (*Id.* ¶ 19.)  Defendants would schedule an inspection meeting with one of Plaintiff's claims representatives, during which Defendants represented that the roof damage was caused by storms.  (*Id*. ¶ 20.)  After repairing or replacing the roofs, Defendants would submit a bill to Plaintiff, which would generally be paid to the homeowners, who would then pay the deductible directly to Erickson Defendants.  (*See id*. ¶¶ 20-21.)  Affected homeowners utilized the mail and/or interstate wire to submit documentation to Plaintiff related to their insurance claims, and Plaintiff reimbursed its insureds for Defendants' work by mail and/or wire.  (*Id.* ¶ 47.)  Defendants received

3

reimbursement for their work after claim information and money were transferred via interstate mail and/or wire. (*Id.* ¶ 49.)[2]

After becoming suspicious of the alleged "storm damage," Plaintiff conducted an investigation. (*Id.* ¶ 23.) Plaintiff hired Haag Engineering to analyze at least seventeen claims of roof damage submitted to Plaintiff by Defendants. (*Id.* ¶ 29.) According to Plaintiff, a licensed engineer from Haag Engineering found intentional damage, or damage inconsistent with storm damage, on each of the seventeen claims analyzed. (*Id.*) Plaintiff's Complaint includes the following details of five such incidents, which occurred between June 2011 and July 2012.[3] (*Id.* ¶¶ 24-28.)

## I. Incidents Alleged in the Complaint

### A. Incident One

On or around June 17, 2011, Defendants Whitehurst and Smolik cold called Plaintiff's insured and told him that his roof had been damaged by an October 2010 storm. (Compl. ¶ 25.) On July 12, 2011, one of Plaintiff's claim representatives observed Defendant Smolik remove a shingle from the roof of the insured's home without permission. (*Id.*) An engineer inspected the roof and found other non-wind

---

[2] Plaintiff's proposed Amended Complaint specifies that Defendants typically submitted their invoices to Plaintiff via facsimile, and the invoices characterized the work as "storm restoration." (Am. Compl. ¶ 20.)

[3] The proposed Amended Complaint asserts instead that the alleged fraudulent acts "began at least as early as June 17, 2011 and continued until at least December 26, 2012." (Am. Compl. ¶¶ 50, 58.)

related damage. (*Id*.) The insured verified that only representatives from Erickson Building had accessed his roof since he had lived at that property. (*Id*.)

### B. Incident Two

In July of 2011, Defendant Whitehurst told Plaintiff's insured that the roof of her Vadnais Heights home might have wind damage. (*Id*. ¶ 24.) The homeowner notified Plaintiff of the damage on August 2, 2011, and Plaintiff scheduled an inspection with Erickson Building for August 11, 2011. (*Id*.) On that date, Plaintiff's claim representative arrived early, observed Defendant Whitehurst causing damage to the insured's roof, and photographed the incident. (*Id*.) On November 7, 2011, Erickson Building sent Plaintiff an invoice for repairs performed at the Vadnais Heights home. (*Id*.) An inspection by an engineer revealed that the damage had not been caused by wind as Defendants had alleged, and that the damage was mechanical (done by human hands or tools). (*Id*.) The insured homeowner has verified that only representatives from Erickson Building had accessed the roof in the prior two to three years. (*Id*.)

### C. Incident Three

On or around August 27, 2011, Defendant Whitehurst and another unidentified Erickson Building employee inspected the roof of a home insured by Plaintiff, in Woodbury, Minnesota. (*Id.* ¶ 26.) Defendant Whitehurst and the other Erickson Building employee told Plaintiff's insured that his roof has sustained storm damage. (*Id*.) An inspection was scheduled for September 6, 2011 at 3:15 p.m. to include representatives from Plaintiff and Erickson Building. (*Id*.) On the date of the inspection, video surveillance captured Defendant Pedery-Edwards arriving at the Woodbury

5

residence at 11:45 a.m., causing damage to the roof of the residence, and leaving at approximately 12:00 p.m. (*Id.*) The homeowner did not know Defendant Pedery-Edwards had been on the roof, nor did he give Defendant Pedery-Edwards permission to be on the roof. (*Id.*) The scheduled inspection occurred at 3:15 p.m. with Defendant Smolik, and damage was discovered, supposedly as a result of a wind storm in October of 2010. (*Id.*) Upon re-inspection, an engineer found twelve shingles had been manually torn, creased, or removed, and the damage was estimated to have occurred more recently than October of 2010. (*Id.*) The insured verified that only representatives from Erickson Building had accessed the roof. (*Id.*)

### D. Incident Four

Video surveillance from May 3, 2012 also shows Defendant Whitehurst and two unidentified representatives of Erickson Building creasing shingle tabs, tearing shingle tabs, and using dirt or debris and water on the exposed surfaces of another roof in Woodbury, Minnesota. (*Id.* ¶ 27.)

### E. Incident Five

On or around July 9, 2012, Defendant Newman inspected the roof of a residence insured by Plaintiff in Chanhassen, Minnesota. (*Id.* ¶ 28.) He told the homeowner that the roof had suffered storm damage. (*Id.*) Video surveillance from July 17, 2012 shows Defendant Newman pulling shingles from the roof and creasing the shingles to make them appear as if they were damaged by wind, hail, or a rainstorm, and then leaving the scene. (*Id.*)

**II. Additional Incidents Alleged in the Proposed Amended Complaint**

The proposed Amended Complaint details two additional incidents and related insurance claims. The first incident (identified as claim number HJE9484N) occurred between March 1, 2012 and April 5, 2012. (Am. Compl. ¶ 26.) Plaintiff asserts that Defendant Whitehurst and another representative from Erickson Building visited a home in Maplewood, Minnesota, and represented to the homeowner that her roof had sustained storm damage. (*Id*. ¶¶ 26-27.) On June 18, 2012, Erickson Building sent Plaintiff an invoice via facsimile, which described the work as "storm restoration." (*Id*. ¶ 28.)

The second incident (claim number HLK9318001) involved another home insured by Plaintiff in Woodbury, Minnesota. (*Id*. ¶ 33.) On May 18, 2012, a representative from Defendant Erickson Building told the insured that his roof had been damaged by wind from a March 25, 2012 storm. (*Id*. ¶ 32.) On June 19, 2012 Erickson met with one of Plaintiff's claim representatives to inspect the home. (*Id*. ¶ 33.) On December 26, 2012, Erickson Building submitted an invoice to Plaintiff via facsimile for its work described as "storm restoration." (*Id*. ¶ 34.) An engineer inspected the damage and concluded that four shingles on the roof had been creased in a manner inconsistent with wind damage. (*Id*. ¶ 35.)

Plaintiff asserts the following claims in this action: (1) Violation of the RICO Act; (2) Piercing of the Corporate Veil; (3) Respondeat Superior; (4) Liability of Principals for

the Acts of Their Agents; (5) Consumer Fraud; (6) Common Law Fraud; (7) Negligent Misrepresentation; and (8) Unjust Enrichment.[4] (Compl. ¶¶ 30-104.)

## DISCUSSION

### I. Motion for Judgment on the Pleadings

Erickson Defendants now seek partial judgment on the pleadings with respect to Count I of the Complaint, which alleges a RICO Act Violation.

#### A. Legal Standard

A court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Rule 12(b)(6). *See Ashley County v. Pfizer,* 552 F.3d 659, 665 (8th Cir. 2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

---

[4] Plaintiff's additional factual allegations notwithstanding, the proposed Amended Complaint asserts the same eight counts as the original Complaint. (*See* Am. Compl. ¶¶ 38-115.)

8

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### B. RICO Claim

Count I of the Complaint asserts a civil RICO claim against all Defendants. Pursuant to 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" is defined by statute to include certain felony offenses under State law as well as any act indictable under specific sections of Title 18 of the United States Code. 18 U.S.C. § 1961(1). The RICO Act, however, does not provide a cause of action for all instances of wrongdoing; its focus, rather, is the eradication of "organized, long-term, habitual criminal activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citing *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006)).

9

To establish a federal civil RICO violation under § 1962(c), a plaintiff must demonstrate: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Crest Const. II,* 660 F.3d at 353; *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291-92 (11th Cir. 2010); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). "A pattern is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009). Moreover, "[t]he requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *see also United States v. Persico,* 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise."), *cert. denied,* 486 U.S. 1022 (1988).

Civil RICO plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . shall recover threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c). Thus, to have standing to assert a RICO claim, a plaintiff "must have (1) sustained an injury to business or property (2) that was caused by a RICO violation." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012).

### 1. Predicate Acts

The predicate acts[5] that form the basis of Plaintiff's RICO claim are wire and mail fraud. *See* 18 U.S.C. §§ 1341, 1343. Specifically, mail fraud and wire fraud consist of "the foreseeable use of the mails or wires for the purpose of carrying out a scheme to defraud." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001). "The crime of mail fraud is broad in scope and its fraudulent aspect is measured by a non-technical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty, and fair play." *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 991 (8th Cir. 1989). Even routine business communications by mail or wire may be sufficient to make a scheme of false dealing a federal offense. *Abels*, 259 F.3d at 918 (citing *Atlas Pile Driving*, 886 F.2d at 992 (noting that a mailing that serves as an element of mail fraud "may be a routine mailing or even one that is sent for a legitimate business purpose so long as it assists in carrying out the fraud")).

At the outset, Erickson Defendants dispute that they utilized the mail or wires in furtherance of any alleged scheme to defraud. Plaintiff's RICO claim stems from its allegation that Defendants utilized U.S. mail or wire to transmit fraudulent invoices to Plaintiff as a result of damage intentionally caused by Defendants, and that payments

---

[5]   An act of racketeering under RICO is commonly referred to as a "predicate act." *Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012).

related to the scheme were made by U.S. mail or wire. (*See* Compl. ¶¶ 39-42, 47.)[6] The Court finds that Plaintiffs have pled mail or wire fraud sufficient to support an alleged RICO violation. Plaintiff identifies at least five separate incidents (plus two more in its proposed Amended Complaint) of purportedly fraudulent claims made by Defendants, which were submitted to Plaintiff by facsimile and which Plaintiff ultimately paid by mail or wire. The Court therefore concludes that, at this early stage of litigation, Plaintiff has pointed to sufficient predicate acts to assert a viable RICO claim. *See, e.g., Heaven & Earth, Inc. v. Wyman Props. Ltd. P'ship*, Civ. No. 03-3327, 2003 WL 22680935, at *8 (D. Minn. Oct. 21, 2003).

### 2. Pattern of Racketeering Activity

Additionally, Erickson Defendants contend that Plaintiff has failed to plead a pattern of racketeering activity or a threat of continued criminal activity. A pattern of racketeering activity exists only when predicate acts are linked by "continuity plus relationship." *Handeen v. Lemaire,* 112 F.3d 1339, 1353 (8th Cir. 1997) (quoting *H.J. Inc. v. Nw. Bell Tel.,* 492 U.S. 229, 239 (1989)). The Supreme Court has referred to continuity as both a closed and open-ended concept that is principally temporal in nature. *Handeen*, 112 F.3d at 1353 (quoting *H.J. Inc.*, 492 U.S. at 241). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of

---

[6] Plaintiff's proposed Amended Complaint specifies that Defendants utilized facsimile to transmit their invoices to Plaintiff, which contained the purported false representation that Defendants had performed "storm restoration." (*See* Am. Compl. ¶¶ 54, 57.)

12

related predicates extending over a substantial period of time." *Handeen,* 112 F.3d at 1353 (quoting *H.J., Inc.,* 492 U.S. at 242).  In the alternative, the predicates may satisfy the definition of open-ended continuity to the extent that they "involve a distinct *threat* of long-term racketeering activity."  *Handeen*, 112 F.3d at 1353 (quoting *H.J. Inc.,* 492 U.S. at 242).

Erickson Defendants argue that the acts relied upon by Plaintiff in support of its RICO claim occurred sporadically over an insufficient length of time, and likewise pose no threat of continued criminal activity.  As alleged by Plaintiff, the purported fraudulent activity spanned from at least June 17, 2011 to July 9, 2012, which is a sufficient period of time to support closed-ended continuity.  *See United States v. Hively*, 437 F.3d 752, 761 (8th Cir. 2006) ("Continuity can be shown by related acts continuing over a period of time lasting at least one year (closed ended continuity) . . . .").  The Court concludes that Plaintiff has adequately pled that Defendants' racketeering activities manifested both relatedness and continuity.  Plaintiff alleges that Defendants implemented a scheme to defraud insurers and that the fraud was accomplished by a common method:  vandalizing insured property, misrepresenting it as storm damage, and generating fraudulent billing statements, which were distributed by mail or wire.  These activities appear to have taken place as part of Defendants' regular business practice and therefore demonstrate continuity.  Accordingly, Plaintiff has properly alleged a pattern of racketeering activity. *See, e.g., Heaven & Earth*, 2003 WL 22680935, at *9.

### 3. Causation and Damages

Erickson Defendants further allege that Plaintiff lacks standing to bring a RICO claim because it has not adequately pled an injury "by reason of" the purported racketeering activity. Section 1964(c) provides that any person "injured in his business or property by reason of a violation of section 1962" may sue for treble damages. 18 U.S.C. § 1964(c). "The Supreme Court has construed the 'by reason of' language to incorporate the traditional requirements of proximate or legal causation, as opposed to mere factual or 'but for' causation." *Bieter Co. v. Blomquist,* 987 F.2d 1319, 1325 (8th Cir. 1993) (citing *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258 (1992)). In the context of RICO, "proximate causation requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *United Healthcare Corp. v. Am. Trade Ins. Co., Ltd.,* 88 F.3d 563, 572 (quoting *Holmes*, 503 U.S. at 268).

Erickson Defendants contend that Plaintiff did not suffer any damages "by reason of" the acts of racketeering alleged in the Complaint. Erickson Defendants maintain that any damages Plaintiff suffered arose out of Plaintiff's contractual relationships with the insureds—not as a direct result of any alleged mail or wire fraud.

Plaintiffs have pled that mailings or wires were utilized by Defendants for the purpose of carrying out its scheme to defraud, and Plaintiff's losses were the direct result of Defendants' wrongful conduct. Plaintiff has adequately alleged that Defendants' scheme, including the alleged mail or wire fraud that forms the basis for Plaintiff's RICO claim, proximately caused Plaintiff's damages. *See, e.g., Heaven & Earth*, 2003 WL 22680935, at *10. As such, the Court finds that Plaintiff has standing to assert the claim.

The Court concludes that Plaintiff's Complaint contains sufficient factual allegations to state a RICO claim. At this early stage of litigation, the predicate acts alleged support a claim that Defendants engaged in a pattern of racketeering activity that caused Plaintiff's damages. As such, the Court denies Erickson Defendants' motion for partial judgment on the pleadings.

## II.     Motion to Amend the Complaint

Plaintiff moves to amend its Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides in relevant part:

> **(a) Amendments Before Trial.**
>
> **(1)** *Amending as a Matter of Course.*  A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2) Other Amendments.**  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15.

The Court finds that amendment is permissible at this early stage of the proceedings and would not result in any undue prejudice to Defendants. The proposed additional factual allegations are similar to those comprising the original Complaint and provide further support for Plaintiff's claims. As such, the Court grants Plaintiff's

motion to amend.  Plaintiff shall serve and file its Amended Complaint as soon as practicable.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants Erickson Building, Inc. and Lee W. Erickson's Motion for Partial Judgment on the Pleadings (Doc. No. [17]) is **DENIED**.

2. Plaintiff's Motion to Amend the Complaint (Doc. No. [25]) is **GRANTED**.

Dated:  July 26, 2013                                  s/Donovan W. Frank
                                                                    DONOVAN W. FRANK
                                                                    United States District Judge